## St. Clair, Madison & St. Louis Belt Railway Company v. Frank Henckell.

1. ASSUMED RISK—*when doctrine of, applies.* A servant assumes those risks incident to his employment which are open and visible.

Action on the case for personal injuries. Appeal from the Circuit Court of Madison County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the August term, 1905. Reversed, with finding of facts. Opinion filed March 22, 1906.

JOHN M. McGINNIS, for appellant; C. N. TRAVOUS, of counsel.

JOHN J. BRENHOLT, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case in the Circuit Court of Madison County, by appellee against appellant, to recover for a personal injury sustained by him while engaged in the service of appellant as fireman on one of appellant's engines. Trial by jury. Verdict and judgment in favor of appellee for $7,000.

The declaration alleges that appellee was employed as a fireman on an engine of appellant, and while assisting the engineer to drive a plug in a leaking flue of the boiler, by reason of the "corroded and burnt" condition of the flue, it gave way and became detached and separated from the flue-sheet of the boiler, thereby causing steam from the boiler to burst out and flow upon him and burn and scald him. He also avers that he was at the time in the discharge of his duties as fireman, in the exercise of due care and caution for his own safety, was without notice of the corroded and burnt condition of the flue, and that appellant had such notice, or by exercise of reasonable care could have known. The declaration consists of two counts, but the only material difference in them is that the second charges the condi-

tion of the flue as being "corroded and worn out." To this declaration appellant pleaded the general issue.

The engine in use at the time appellee was injured was manufactured for appellant by the American Locomotive Company, a company having a good reputation as engine builders. It was properly constructed of first-class material, thoroughly tested and "free from all defects" when received by appellant. The boiler contained 225 flues. These flues were two inches in diameter and seventeen feet and six inches long. One end of the flues projected through the flue-sheet on the fire-box side and was "beaded." This engine was put in service January 6, 1902, and appellee was injured December 9, 1903.

Appellee entered the service of appellant April 15, 1902, as fireman on the engine in question here, and remained continuously in that service, on the same engine and with the same conductor, to the time of his injury, more than a year and a half, and he had had previous experience as a fireman and knew the dangers and duties incident to the work, at the time he entered this service. It was one of his duties to assist the engineer in plugging flues when they needed plugging, and this duty he had performed when he was a fireman on the "Illinois Terminal," before entering appellant's service, and he had assisted the engineer to plug seven or eight flues on the engine in question since entering the service. Concerning this duty appellee testified: "It has always been the custom to plug the flues when they leak; the company furnished the plugs and we carried them in a plug-box on the end; the company also furnished the plugging-bar." After a flue has been plugged sometimes the plugs "will work loose, then we would put the bar in and tighten them up." And he further testified: Q. "I will ask you how many plugs were in this boiler?" A. "Well, I don't know the exact number, I should judge about seven or eight." Q. "Who put them in?" A. "Mr. Hynman and myself." Q. "Why did you put them in?" A. "To stop the leaking." Q. "Where were they leaking?" A. "Where the beading is off the flues." The

evidence of this witness, appellee, shows that flues may leak from a number of causes; the flue may be worn, it may shrink, or the beading may be off.

Appellee describes what occurred at the time of his injury substantially as follows: They had come to Alton from across the river. Two flues were leaking, one of of them they had plugged about a week before. The engineer ordered appellee to get the plugging-bar and get things ready to plug the flues, and he did that. They plugged one flue in the second row. The one they had plugged a week before still had a plug in it, but was leaking, and the engineer told him to put the bar in the hole of that plug, which he did, and the engineer hit it. He told the engineer he did not think it moved, and the engineer said, "Hold it up again and I will hit another rap." He held it up again, the engineer struck it another blow and the end of the flue was forced through the flue-sheet, leaving a hole about two inches in diameter from which steam escaped, and he was scalded, burned and injured.

Appellee's case is based wholly on the charge that appellant furnished him a " corroded," " burnt " and " worn out" flue to work with; that appellee did not know, and by the exercise of reasonable care and diligence could not have known of its condition, and that appellant did know of its condition, or by the exercise of reasonable care and diligence would have known in time to have prevented the injury.

There is no evidence as to the condition of the flue in the respect complained of prior to the injury. The only evidence as to its condition in that respect at any time is what appeared from an inspection of a piece of flue produced in court and claimed to be a part of the flue in question. Assuming the piece produced to be a part of the flue as claimed, it disclosed no substantial defect, except that at that time the " beading " was off the end of the flue, and that it had either burned off or broken off; and appellee himself testified, " this came loose because the beading was burned off." There is nothing in the evidence to disclose

when it occurred, or that it existed at all prior to the day of the injury.

The undisputed evidence is that a flue might burn in a day, "that it might burn if tested every day," and that the beading may be broken off by the plug's being driven too hard when plugging the flue.

As to appellee's knowledge and means of knowledge concerning the beading, the undisputed evidence is that the beading was on the ends of the flues that protruded through the flue-sheet on the side of the sheet towards the fireman, appellee, and that it could be seen whether the beading was on or off by looking at it across the fire-box. To this appellee's counsel suggest that by reason of the distance across the fire-box and the heat there was no opportunity to make an examination or test as to its condition of soundness or strength even if he could see it, and further, that it was not his duty to look out for defects, that he might rely upon the assumption that the master, appellant, had performed its duty.

Under many states of case this would be true, but here appellee knew that the flue was leaking and he knew, as he testified, that "it could not leak without being defective," and he also knew that the mere fact of its leaking indicated that the beading was probably off. In speaking of the number of flues he and the engineer had plugged in that boiler, he said: "Seven or eight," I think; "they were put in by Mr. Hynman and myself; we put them in to stop the leaking where the beading is off the flues." His own testimony discloses that he knew that a flue might spring a leak at any time from one of these causes which he mentioned; when it "became loose," when it "shrinks away from the flue-sheet," and when the "beading is off."

When appellee saw the flue was leaking he knew that the beading was probably off, as that was one of the causes of such leaking; he knew that it was usual to plug such flues when they were leaking, and that it was more dangerous to plug them than to plug one that might be leaking from one of the other causes; he knew that to assist in the

plugging of flues leaking from this very cause was a part of the duty he had contracted to perform, and he further knew that by simply looking he could - see whether or not the beading was in fact off; although he might not be able conveniently to test the soundness and strength of the beading that was on.

From the whole evidence it is conclusively apparent to the court that appellee's injury resulted from an assumed risk incident to his employment, and not from the negligence charged in his declaration.

The judgment of the Circuit Court is reversed. And we find as ultimate facts to be incorporated in the judgment, that appellee's injury was the result of one of the ordinary risks incident to the work in which he was engaged, and of which he had knowledge. And we further find that he was not injured by reason of negligence on the part of appellant as charged in the declaration.

*Reversed.*